1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| MARTHA DEA LA ROSA, an individual,<br><br>                                  Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington Corporation; and DOES 1 through 25, inclusive,<br><br>                                  Defendants. | Case No.:  3:21-cv-1630-W-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COSTCO WHOLESALE CORPORATION'S MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGEMENT [DOC. 18]** |

18
19
20

Pending before the Court is Defendant Costco Wholesale Corporation's motion for summary judgement or, in the alternative, partial summary judgement.  [Doc. 18.]

21
22
23

The Court decides the motions on the papers, and without oral argument.  *See* Civ.L.R. 7.1.d.1.  For the reasons that follow, **GRANTS IN PART** and **DENIES IN PART** Defendant's motion [Doc. 18].

24
25

## I.    FACTUAL BACKGROUND

26

### A.    De La Rosa's Beginning of Employment at Costco

27
28

De La Rosa began her employment with Costco Wholesale Corporation ("Costco") in August 2001 as a Quality Control Line Technician at Costco's 910 packing facility in

1

San Diego.  (Deposition of Johnny Vergara ("Vergara Dep."), Exhibit G to Declaration of Christopher L. Garcia ("Garcia" Decl.") [Doc. 18-1], ¶ 8.)  As a Quality Control Line Technician, De La Rosa's essential job duties included monitoring the production lines, deciphering codes for products, checking the work of other quality control employees, checking the cleanliness of machines, entering information into a computer, and checking the weight of products.  (Deposition of Martha De La Rosa ("De La Rosa Dep.") at 22:22-23:8.)  De La Rosa reported to production supervisor Erick Rosas.  (*Joint Statement of Disputed and Undisputed Facts* [Doc. 20], #13.)  Rosas reported to quality control manager Johnny Vergara.  (*Id.*, #14.)  Vergara reported to Eric Foster.  (*Id.*, #15.) Foster reported to Kenneth Eakes.  (*Id.*, #15.)

### B.    De La Rosa's Leaves Of Absence

De La Rosa requested, and was approved for intermittent leave from March 8, 2017 to September 8, 2017.  (*Id.*, #6.)  De La Rosa requested, and was approved for continuous leave from November 2, 2017 to November 7, 2017.  (*Id.*, #10.)  De La Rosa requested, and was approved for continuous leave from November 13, 2017 to December 8, 2017, which was in turn extended to January 25, 2018, and then further extended to May 1, 2018. (*Id.*, #11.)

### C.    De La Rosa's Work Restrictions and Medical Accommodations

In 2007, De La Rosa reported a carpal tunnel injury while working with a machine.  (De La Rosa Dep. at 66:6-67:3.)  De La Rosa's doctor-imposed work restrictions of not lifting more than 10 pounds and no repetitive work.  (De La Rosa Dep. at 67:5-10.)  Following the injury, De La Rosa was never reprimanded or disciplined for falling behind in her work.  (De La Rosa Dep. at 68:15-69:19.)

In July 2017, De La Rosa presented a doctor's note indicating she had work restrictions precluding her from lifting, pulling, or pushing in excess of 10 pounds.  (*Joint Statement of Disputed and Undisputed Facts*, #7.)  Costco held an in-person job assessment review meeting with De La Rosa to determine if she could perform the essential functions of her Quality Control Line Technician position in light of her

restrictions, and if not, to explore whether any reasonable accommodations were available to enable her to do so.  (*Id.*, #8.)  Both Costco and De La Rosa agreed that De La Rosa could perform all of her position's essential functions and that no accommodation was necessary for her to do so.  (Foster Decl., ¶ 2; Ex. C.)  As to the non-essential functions of her position, De La Rosa agreed she would "self monitor to ensure [she was] working within [her] restrictions and request assistance when needed."  (*Id.*, #9.)

### D.    2019 Medical Leave

On January 9, 2019, De La Rosa began experiencing severe pain in her abdomen shortly after the start of her shift.  (De La Rosa Dep. at 217:17-18.)  De La Rosa immediately approached Rosas informing him of the pain and requesting to be excused from her shift.  (*Id.* at 217:11-20.)  Rosas refused to let her leave.  (*Id.*, 217:17-18.)  De La Rosa then requested that she be placed on a "lighter" production line which Rosas also refused.  (De La Rosa Dep. at 31:3-8.)  At some point, Vergara and Rosas also spoke with Angela Cruz ("Cruz"), another production supervisor, regarding De La Rosa's request to leave.  (De La Rosa Dep. at 29:15-29:25; De La Rosa Decl., ¶ 2.)  They held a meeting in Cruz's office while De La Rosa waited outside.  (De La Rosa Dep. at 30:1-3.)  After the meeting, De La Rosa was told that she had to continue working.  (*Id.* at 30:11-18.)  Two hours after her first request, De La Rosa approached Vergara again, informing him that she was in a lot of pain and again asked to leave early or be placed on a lighter production line. (De La Rosa Dep. at 30:25-32:2; 150:21-24.)  Vergara told De La Rosa that he could not do anything and instead admonished her for always being sick. (De La Rosa Dep. at 30:19-22; 150:21-151:4.)  When her pain continued, De La Rosa again approached Rosas, stating she was in pain and needed help, but Rosas refused her pleas. (De La Rosa Dep. at 149:17-19.)  Before the end of the shift, two of De La Rosa's coworkers offered to switch production lines with her; however, Rosas refused the request despite rotation being a regular occasion on the production lines.  (De La Rosa Dep. 31:23- 32:8; Vergara Dep. at 25:24-26:7.)  That same day, De La Rosa went on a

3

medical leave of absence after having surgery for a hernia.  (*Joint Statement of Disputed and Undisputed Facts*, #25.)  Costco accommodated De La Rosa's absence until she returned in April 2019.  (De La Rosa Dep. at p. 32:22-33:17.)  When De La Rosa returned to work, she did not submit any doctor's note or other documentation indicating she needed any accommodations.  (*Id.* at 247:7-25.)

De La Rosa returned to work on April 9, 2019.  She was placed on two of the heavier production lines and experienced pain. She asked to change to a lighter production line but her request weas denied.  She continued working until April 24, 2019, when she went back to the hospital and stayed there for several days.  (*Id.* at 40:1-14.) Her leave was extended to May 2, 2019, then again to June 1, 2019, then again to June 17, 2019, and finally to July 10, 2019.  (*Id.* at 174:11-177:20.)

### E.    Costco's Investigation

On February 20, 2019, Erin Sieglock, Costco's Ancillary Operations Manager, contacted Celeste Parker regarding a claim for benefits that had been submitted by De La Rosa.  (Parker Decl. ¶ 3.)  Ms. Parker contacted David Pehau, the Optical Manager of the Costco warehouse located in Chula Vista, California, to learn more information about the matter.  (*Id.*)  Mr. Pehau informed Ms. Parker that on January 5, 2019, De La Rosa's husband attempted to order eyeglasses for himself at the Optical Department of a Costco warehouse in Chula Vista, under De La Rosa's benefits plan through Costco.  (*Id.*)  Mr. Pehau further informed Ms. Parker that De La Rosa's husband submitted a lens prescription from a Dr. Mascareno supposedly located in Chula Vista, but the prescription did not have an exam or expiration date listed.  (*Id.*)  Mr. Pehau further stated that the Optical Department called Dr. Mascareno's office to obtain the missing information, but the provider instead stated it had no record of De La Rosa's spouse ever getting an eye exam at its office.  (*Id.*)  Mr. Pehau further relayed that the provider stated that while the prescription form was the provider's, it appeared the name of the patient had been altered.  (*Id.*)

Upon receiving this information, Ms. Parker investigated the conduct of De La Rosa and her husband.  (Parker Decl. ¶ 4.)  She concluded that:

- On November 20, 2016, De La Rosa had an eye exam at the Costco optical department located at a Costco warehouse on H Street in Chula Vista. (Parker Decl., ¶ 4; De La Rosa Dep. at 77:7-78:17.)

- On January 25, 2017, De La Rosa presented an optical prescription for herself issued by a doctor in Mexico, with a very different lens strength compared to that prescribed by the Costco optician two months earlier.  De La Rosa presented this prescription to a different Costco warehouse located on Broadway in Chula Vista.  (Parker Decl., ¶ 4; De La Rosa Dep. at 77:7-78:17.)

- On March 28, 2018, De La Rosa presented the Costco warehouse on Broadway in Chula Vista with a different optical prescription for herself issued by a doctor in Mexico, which again reflected a very different lens strength.  (Parker Decl., ¶ 4; De La Rosa Dep. 79:23-80:10.)

- Also on March 28, 2018, De La Rosa presented another optical prescription from the same doctor in Mexico for her son, Ryan.  (Parker Decl., ¶ 4.) Ryan had also previously received a Costco eye exam, and the prescription from the doctor in Mexico was dramatically stronger.  (*Id.*)

- On March 20, 2019, De La Rosa ordered another pair of glasses for her son using the prescription from the doctor in Mexico.  (*Id.*)

On April 18, 2019, Ms. Parker called De La Rosa to question her about these events. (Parker Decl., ¶ 5; De La Rosa Dep. 82:19-24; 84:18-85:14; 87:3-17.)  De La Rosa denied any wrongdoing and said she would talk to her husband and call back. (Parker Decl., ¶ 5.)

De La Rosa did not call back, and on April 29, 2019, Ms. Parker called her again and left a voicemail message.  (Parker Decl., ¶¶ 5-6.)  The next day, De La Rosa returned

5

the call and claimed that another doctor in Mexico had written the prescription for her husband using Dr. Mascareno's form. (Parker Decl., ¶ 6.) De La Rosa was not able to provide the phone number or name of the provider in Mexico. (*Id.*) With regard to the various prescriptions with varying lens strengths, De La Rosa told Ms. Parker that the eyeglasses she obtained using the Costco optician's prescriptions did not work, so she instead received an exam with a non-Costco provider. (Parker Decl., ¶ 6; De La Rosa Dep. 74:18-77:6.) After completing this interview, Ms. Parker reported what she had learned to a Costco Personnel Manager – Kyle Hofman – at Costco's home office. (Parker Decl., ¶ 7; Declaration of Kyle Hofman in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Hofman Decl."), ¶ 6, Ex. D.) Mr. Hofman, in turn, conferred with Ancillary Operations Manager Erin Sieglock to understand the ramifications of using Costco's vision benefits to obtain fake and/or forged prescriptions. (Hofman Decl., ¶ 8.) Ms. Sieglock informed Mr. Hofman that filling fraudulent prescriptions may jeopardize the dispensing license of the Costco optician who filled the prescription. (Hofman Decl., ¶ 8.) Mr. Hofman concluded that De La Rosa's conduct constituted terminable offenses, and that Human Resources would support a decision to terminate De La Rosa's employment as a result. (Hofman Decl., ¶ 9.) Mr. Hofman reported the findings of the investigation and his conclusions to Eric Foster, the General Manager of CWI West, where De La Rosa worked. (Hofman Decl., ¶ 10; Foster Decl., ¶ 6.) Mr. Foster consulted with Assistant Vice President Noe Betancourt regarding De La Rosa's conduct. (Foster Decl., ¶ 7.) Mr. Betancourt told Mr. Foster that he believed termination was appropriate because De La Rosa's conduct put Costco and the optician's license at risk, and this was a zero tolerance in his eyes. (Foster Decl., ¶ 7.) Mr. Foster then made the decision to terminate De La Rosa's employment. (Foster Decl., ¶ 8.) On July 10, 2019, Mr. Foster met with De La Rosa, explained to De La Rosa the investigation that was conducted, the conclusion reached that she engaged in benefits fraud, and that her employment was being terminated as a result. (Hofman Decl., ¶ 12; Foster Decl., ¶ 11.)

6

## II.   LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322–23.  If the moving party fails to discharge this initial burden, the court must deny summary judgment and need not consider the nonmoving party's evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot avoid summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."  *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.").  Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories,

and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Ford Motor Credit Co. v. Daugherty*, 279 Fed. Appx. 500, 501 (9th Cir. 2008) (citing *Celotex*, 477 U.S. at 324). At this stage, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.

## III.  DISCUSSION

### A.  Discrimination and Retaliation Claims

The first issue raised in Defendant's motion is De La Rosa's discrimination and retaliation claims under the Fair Employment and Housing Act ("FEHA"). De La Rosa's first cause of action contends that her protected status (disability) was a motivating factor in Defendants' termination of her (*Compl.* ¶ 29) and her fourth cause of action contends that her termination was taken in retaliation for exercising her rights under FEHA (*Compl.* ¶ 56). The parties address the two causes of action together; the Court will do the same.

When a plaintiff alleges retaliatory employment termination under the FEHA and the defendant seeks summary judgment, California follows the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to determine whether there are triable issues of fact for resolution by a jury. *See Loggins v. Kaiser Permanente*, 151 Cal. App. 4th 1102, 1113 (2007). And so too where a plaintiff alleges discrimination under the FEHA. *See Caldwell v. Paramount Unified School District*, 41 Cal. App. 4th 189, 195 (1995).

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If established, the prima facie case "results in a 'presumption that the [defendant] unlawfully discriminated against the [plaintiff].'" *Lessard v. Applied Risk Management*, 307 F.3d 1020, 1025 (9th Cir. 2002) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). The burden then shifts to the defendant to articulate

8

a legitimate, non-discriminatory reason for the employment action being challenged. *See McDonnell Douglas*, 411 U.S. at 802. If the defendant carries this burden, plaintiff must then demonstrate that the defendant's asserted reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802, 804.

### 1. Whether De La Rosa Has Established a Prima Facie Case Under the McDonnell Douglas Framework

De La Rosa contends that Costco concedes that she has established a prima facie case of discrimination and retaliation for her first and fourth causes of action. (*Opp.* to MSJ at 15.) Because the analysis in Costco's motion begins with discussion of the legitimate business justification and because Costco does not dispute this in their reply papers, the Court agrees.

Even if Costco did not concede this point, the Court would find that De La Rosa has met her burden at this step. The amount of proof necessary to establish a prima facie case at the summary judgment stage is minimal and need not even rise to a preponderance of the evidence. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Rather, De La Rosa need only adduce proof that "gives rise to an inference of unlawful discrimination." *Id.* This requires "very little" evidence. *Caldwell*, 41 Cal. App. 4th at 197 (quoting *Sischo-Nownejad v. Merced Community College District*, 934 F.2d 1104, 1111 (9th Cir. 1991)). De La Rosa has satisfied her burden by showing that: (1) she was a member of a protected class (disabled), (2) she was performing competently in the position she held, (3) she was terminated, and (4) she was terminated very close in time to an extended medical leave for her disability. *See Guz v. Bechtel National*, 24 Cal.4th 317, 355 (2000).

### 2. Costco's Legitimate, Non-Discriminatory Explanation

Since De La Rosa has established a prima facie case, Costco must articulate a legitimate, non-discriminatory reason for its adverse employment action. *Burdine*, 450 U.S. at 255. Costco's proffered legitimate, non-discriminatory reason for the termination is that it determined that De La Rosa had engaged in fraud and violated Costco policy.

9

(*See MSJ* at 12.)  Undisputed facts establish that Costco was alerted to potential fraud. Costco investigated that potential fraud and came to the reasonable conclusion that De La Rosa was engaging in the fraud.  Based on the results of the investigation, Costco determined De La Rosa had violated Costco policy and terminated her.  Given this evidence, the Court concludes that Costco has articulated a legitimate, non-discriminatory reason for De La Rosa's termination.

### 3.    Whether De La Rosa Has Raised a Genuine Issue of Fact Regarding Pretext

Because Costco has adduced evidence that it had a legitimate reason for terminating De La Rosa, she must, to survive summary judgment, demonstrate that Costco's articulated reason is a pretext for unlawful discrimination by "'either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  When relying on indirect, circumstantial evidence to prove pretext, a plaintiff must produce specific and substantial evidence "that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable."  *Chuang*, 225 F.3d at 1127.  The "evidence must be both specific and substantial to overcome the legitimate reasons[.]"  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002), as amended (July 18, 2002).

The California Supreme Court has held that "evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias."  *Guz*, 24 Cal.4th at 380; *see also Morgan*, 88 Cal. App. 4th at 75 ("An employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise.  Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

find them unworthy of credence, ... and hence infer that the employer did not act for the [... asserted] non-discriminatory reasons") (quoting *Horn v. Cushman & Wakefield, Inc.*, 72 Cal. App. 4th 798, 807 (1999) (internal quotations omitted)).

De La Rosa points to several different aspects of the investigation and termination decision to argue that there is a genuine issue of material fact regarding the truth of Costco's articulated non-discriminatory reason.

### a)    Costco's termination approval process

De La Rosa first argues that Costco "failed to adhere to the company's policy that controls terminating an employee of De La Rosa's tenure" and that this "points to unlawful discriminatory animus as the true reason for Foster's decision to terminate." (*Opp.* at 16.)  Specifically, De La Rosa argues that Foster did not receive approval for De La Rosa's termination from an Executive Vice President, as required by Costco's Employee Agreement.

Costco does not dispute that Costco's policy states that De La Rosa's termination should have been reviewed by an Executive Vice President or higher and does not dispute that no executive vice president approved De La Rosa's termination.  (*See Joint Statement of Disputed and Undisputed Facts*, #116-119.)  This failure does not raise doubts regarding Costco's articulated reason.  Foster informed Kenneth Eakes, an Assistant Vice President at Costco, and Richard Chavez, a Senior Vice President at Costco, of his decision to terminate De La Rosa and they both approved the termination. (Foster Decl., ¶ 8.)

There is no evidence that Foster's actions were motivated by any reasons inconsistent with Costco's articulated reason for terminating De La Rosa.  De Le Rosa, who has the burden at this stage, has not put forth any other evidence that suggests Foster's actions were anything more than an oversight.   Both Eakes and Chavez received the email with Parker's findings, which contains nothing inconsistent with Costco's articulated reason.  De La Rosa has not even shown that Foster willfully chose not to seek approval from an Executive Vice President with knowledge that he was violating policy.

1   Costco's articulated reason for the termination is that it determined that De La Rosa had
2   engaged in fraud and violated company policy. A mistake or oversight, without more,
3   does not suggest any inconsistency or implausibility in that articulated reason.

4          De La Cruz also argues that Hofman's recommendation to Foster was based on the
5   conclusion that the prescriptions were fraudulent "despite the investigation not finding
6   the prescriptions to *actually be* fraudulent." (*Opp.* at 17 (emphasis in original).)  Costco
7   is not required to definitively prove that the prescriptions were "actually" fraudulent.  *See*
8   *Hersant*, 57 Cal. App. 4th at 1005 (honest, but mistaken belief that grounds for discharge
9   exist precludes finding of discrimination).  De La Rosa has not put forth any evidence
10  that raises a genuine issue of material fact as to whether Costco had a good faith belief
11  that the prescriptions were fraudulent.

12         Finally, De La Rosa argues that Foster's interactions with Betancourt and Eakes
13  suggest that Costco's reason is pretext for discriminatory animus.  This argument recites
14  facts surrounding Foster's decision to terminate De La Rosa but cites to no specific or
15  substantive evidence that casts doubt on Costco's articulated reason.  It is undisputed that
16  Foster had personal knowledge of De La Rosa's medical leaves throughout Costco's
17  investigation, but this simple fact is not evidence of pretext.  And it does not transform
18  other facts—like Foster's decision to consult Betancourt or his conversation with
19  Eakes—into evidence of pretext.  The burden on De La Rosa at this stage requires her to
20  put forth specific evidence on Foster's actions that demonstrate Costco's proffered reason
21  is implausible.  De La Rosa has not done so.  The only specific evidence as to the content
22  of these interactions are the emails sent by Foster—and nothing in those emails suggest
23  that Costco's articulated reason has inconsistencies or should not be believed.

### b)      Parker's Investigation

25         De La Rosa argues that Parker "had personal knowledge of De La Rosa's medical
26  leave" and that this knowledge "influenced Costco's underlying actions and ultimately
27  lead to an incomplete investigation that was used to terminate De La Rosa."  (*Opp.* at 18.)
28  This argument fails at both levels.

At the first level, De La Rosa fails to put forth evidence that Parker's knowledge influenced her investigation.  The paramount evidence on Ms. Parker's investigation—her April 30, 2019 email to Foster—suggests that her investigation was focused on the suspected fraudulent prescriptions.  At the very end of the email, Parker mentions that De La Rosa "has been on a LOA" but De La Rosa points to nothing else that suggests her knowledge of this fact affected her investigation in any way.  Indeed, the rest of the email and the rest of the evidence demonstrates her focus on the suspected fraudulent prescription activity.

Parker was not the individual who initiated the investigation, she came to no conclusions regarding her findings, and she made no recommendations to anyone regarding any action that should be taken as to De La Rosa or her employment.  And she points to no evidence of *how* the influence occurred or where it manifested in the investigation.  In other words, De La Rosa does not show that Parker's knowledge of her medical leave affected the investigation in any way.  De La Rosa asks this Court to infer "influence" from the fact that Parker had "knowledge" but offers nothing to support that connection.  The mere fact that Parker had knowledge of De La Rosa's medical leave is not evidence that this knowledge influenced Costco's termination decision.

At the second level, De La Rosa's criticism of Parker's investigation as "wholly lacking" and "incomplete" does not raise a genuine dispute that Costco's articulated reason is inconsistent or not believable.  De La Rosa argues that Parker "relie[d] solely on a single conversation with Pehau to set the foundational facts of the investigation, did "months of no work[,]" and failed to complete previous investigations "fully and competently."  (*Opp.* at 19.)  Courts analyzing this kind of argument have found that it is not enough to show that the defendant's course of action was imperfect or had missteps. *See Hooks v. Works*, 14 Fed. Appx. 769, 772 (9th Cir. 2001) (plaintiff had not presented substantial evidence that the investigation was a "sham"); *Hersant v. Dep't of Social Svcs.*, 57 Cal. App. 4th 997, 1005 (1997) (plaintiff "raised triable issues concerning

13

whether the actions of Department were reasonable and well considered" but not as to whether the "stated reasons were implausible, or inconsistent or baseless").

Parker's investigation began when she was contacted by Ancillary Operations Manager Erin Sieglock regarding an unusual claim for benefits that had been submitted by De La Rosa.  (Parker Decl., ¶ 3.)  Parker then contacted Pehau to discuss his findings. She received a significant amount of information from Pehau, including his findings regarding De La Rosa's family members' prescription history, noted discrepancies with the strength of De La Rosa's various prescriptions, and the results of his call with Dr. Mascareno's office about the allegedly fraudulent prescription.  (Parker Decl., ¶ 4.) Parker relied on Pehau's findings, as shown by her email to Foster and her deposition testimony.  Pehau conveyed the piece of information most crucial to Costco's articulated reason: that Dr. Mascareno's office stated that it had no record of De La Rosa's spouse ever getting an eye exam at its office and "stated that the prescription that was submitted seemed to have been altered."  (Exhibit D to Hofman Decl.)  De La Rosa has put forth no evidence that Parker had any reason to doubt these findings, or any other information received from Pehau.

Parker continued her investigation by calling De La Rosa to ask her about the underlying prescription and prescription history, following up with De La Rosa when she did not call her back as indicated, and then reporting what she had learned to Hofman. De La Rosa is correct that Parker did not contact De La Rosa until almost two months after her last call with Pehau and that no further investigation between this time.  (Parker Dep. at 54:10-17; Parker Decl., ¶ 5.)  But the evidence shows that this extended period of time was due to an instruction from Costco's director of personnel to not contact De La Rosa while she was on medical leave.  (Parker Dep. at 54:18-24.)

All in all, the evidence related to Parker and her investigation does not tend to show that Costco's articulated motives were inconsistent or not believable.  *See Chuang*, 225 F.3d at 1127.

        c)    **Foster's role**

As to Foster, De La Rosa argues a "cat's paw theory," alleging that Foster "used the investigation [into the prescription issue] to push [AVP Kenneth] Eakes to terminate De La Rosa." (*Opp.* at 18.)  De La Rosa proffers no specific or substantial evidence to support this theory.

It is undisputed that Foster had knowledge of each of De La Rosa's medical leaves. (Foster Dep. at 26:25-27:14; 28:7-10; 72:20-25; 77:5-15.)  But De La Rosa fails to show that this knowledge affected his actions in any way.  Foster sent an email to Eakes that reads "FYI" with a copy of Hofman's conclusions below it. (*Opp.* Ex. O.)  Informing does not amount to pushing.  Like De La Rosa's argument as to Parker, this argument jumps from knowledge to motivation without evidence to support the leap.

All in all, De La Rosa has not put forth evidence that persuades the Court "that a discriminatory reason more likely motivated the employer" or that Costco's articulated reasons "is unworthy of credence." *Chuang*, 225 F.3d at 1124 (9th Cir. 2000) (internal quotations omitted).  De La Rosa has thus failed to satisfy her burden at stage three of the McDonnell Douglas test.  The Court therefore **GRANTS** Costco's motion to dismiss the first and fourth causes of action.

### B.   <u>Derivative Wrongful Termination and Failure to Prevent Claims</u>

De La Rosa's failure to prevent claim (seventh cause of action) and her wrongful termination claim (the eighth cause of action) are premised on the same facts as her discrimination and retaliation claims.  Because those claims fail for the reasons above, these claims likewise fail.  The Court therefore **GRANTS** Costco's motion to dismiss the seventh and eighth causes of action.

### C.   <u>Costco's Failure to Accommodate in Violation of FEHA</u>

De LA Rosa's third cause of action is for failure to accommodate in violation of FEHA.  Costco argues that this claim fails.  De La Rosa argues that she a has established a prima facie case for failure to accommodate.  (*Opp.* at 19.)  The Court agrees with De La Rosa.

To prevail on this claim, De La Rosa bears the burden to prove that (1) she had a disability covered by the FEHA, (2) she was a qualified individual (i.e., she could perform the essential functions of her job with or without reasonable accommodation), and (3) Costco failed to reasonably accommodate her. *See Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 373 (2015). As to the incident on January 9, 2019 and the incident on April 9, 2019, the Court finds that De La Rosa has put forth evidence to raise a genuine dispute of material fact for each of these elements.

At the time of both incidents, De La Rosa had a disability covered by the FEHA and was a qualified individual. De La Rosa testified that when she arrived at work on January 9, 2019, she immediately notified Eric Rosas that she was feeling pain and would like to be excused from her shift. (De La Rosa Dep. at 217:17- 18.) She was denied this accommodation. De La Rosa then approached Vergara and requested that she be put on a lighter production line, but again was refused. (De La Rosa Dep. at 31:3-8.) De La Rosa asked again if she could be allowed to leave or alternatively be placed on a different production line but was refused each time. (De La Rosa Dep. at 30:25-32:2; 150:21-24.) De La Rosa's testimony raises a genuine issue of material fact as to whether Costco failed to reasonably accommodate her on January 9, 2019.

De La Rosa testified that when she returned to work on April 9, 2019 following her hernia surgery, she again notified Costco that she was experiencing pain and would like to be placed on a lighter production line as the one that she had placed on was particularly heavy. (De La Rosa Dep. at 146:15-23; 152:20-23; 215:20-23.) According to De La Rosa, Costco ignored her pleas for reasonable accommodation until De La Rosa was placed back on leave on April 24, 2019. (De La Rosa Dep. at 146:19-24.) This evidence demonstrates a genuine dispute of material fact as to whether Costco failed to reasonably accommodate her in April 2019.

For the reasons states above, Costco's motion to dismiss the third cause of action is **DENIED**.

**D.** **Failure to Engage in a Good Faith Interactive Process in Violation of FEHA**

Costco also seeks summary judgement on De La Rosa's second cause of action, violation of FEHA for failure to engage in a good faith interactive process. (*MTD* at 14-15.)

Under the FEHA, it is unlawful for an employer to "fail to engage in a timely, good faith, interactive process with the employee ... to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." CAL. GOV. CODE § 12940(n). The duty to engage in the interactive process is generally "triggered upon notification of the disability and the desire for accommodation." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (citations omitted). An "employer has a mandatory obligation to engage in the interactive process and that this obligation is triggered either by the employee's request for accommodation or by the employer's recognition of the need for accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *rev'd on other grounds*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

As to Costco's actions on January 9, 2019 and in April 2019, the Court finds that De La Rosa has put forth evidence to raise a genuine dispute of material fact regarding whether Costco failed to participate in a good faith interactive process. In January 2019 and April 2019, De La Rosa had a disability covered by the FEHA. De La Rosa testified that when she arrived at work on January 9, 2019, she immediately notified Eric Rosas that she was feeling pain and would like to be excused from her shift. (De La Rosa Dep. at 217:17- 18.) Costco denied this requested accommodation without participating in an interactive process. De La Rosa then approached Vergara and requested that she be put on a lighter production line; Costco refused this request as well and did not participate in an interactive process. (De La Rosa Dep. at 31:3-8.) De La Rosa asked again if she could be allowed to leave or alternatively be placed on a different production line but was

17

refused each time without an interactive process.  (De La Rosa Dep. at 30:25-32:2; 150:21-24.)  De La Rosa's testimony raises a genuine issue of material fact as to whether Costco failed to engage in a good faith interactive process on January 9, 2019.

De La Rosa testified that when she returned to work on April 9, 2019 following her hernia surgery, she again notified Costco that she was experiencing pain and would like to be placed on a lighter production line as the one that she had placed on was particularly heavy.  (De La Rosa Dep. at 146:15-23; 152:20-23; 215:20-23.)  According to De La Rosa, Costco did not engage in an interactive process in response to her requested accommodations, ignoring her requests until De La Rosa was placed back on leave on April 24, 2019.  (De La Rosa Dep. at 146:19-24.)  This evidence demonstrates a genuine dispute of material fact as to whether Costco failed to engage in a good faith interactive process in April 2019.

Costco's motion to dismiss De La Rosa's second cause of action is **DENIED**.

### E.   De La Rosa's CFRA Claims

Defendant moves to dismiss De La Rosa's fifth cause of action, violation of the California Family Rights Act ("CFRA"), on the grounds that Costco granted every leave of absence De La Rosa ever requested.  (*See MTD* at 15.)  De La Rosa opposes, arguing that Costco interfered with De La Rosa's CFRA leave.  (*Opp.* at 22.) De La Rosa's argument merely recites the same facts upon which she relies for her FEHA causes of action, but these facts do not raise a genuine dispute as to whether Costco interfered with her rights under the CFRA.  Defendant is correct that De La Rosa testified that she was granted every leave of absence she ever requested, and De La Rosa does not put forth facts that disputes this testimony.  Defendant's motion as to the fifth cause of action is **GRANTED**.

Defendant also moves to dismiss De La Rosa's sixth cause of action for retaliation in violation of the CFRA.  This cause of action is premised on the same facts as her retaliation claims under FEHA and the requisite legal elements are similar.  To succeed on a claim for retaliation in violation of the CFRA, De La Rosa must show: (1) Costco

was covered by the CFRA; (2) De La Rosa was eligible to take CFRA leave; (3) De La Rosa exercised her right to take leave for a qualifying CFRA purpose; and (4) De La Rosa suffered an adverse employment action, because of the exercise of her right to CFRA leave.  *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal. App. 5th 570, 604 (2016).  As explained above, De La Rosa has not established genuine issues of fact concerning whether Costco retaliated against her for taking medical leave.  The same reasoning applies here.  Costco put forth a legitimate business reason for terminating De La Rosa and she has not shown that Costco's proffered reason is inconsistent or implausible.  Defendant's motion to dismiss the sixth cause of action is **GRANTED**.

### F.   De La Rosa's Wage Statement Claim

De La Rosa's tenth cause of action alleges a violation of California Labor Code § 226 on the basis that her wage statements failed to accurately show the hours she worked and the pay she received.  (*Compl.*, ¶ 101.)  Costco moves to dismiss this cause of action.  (*MTD* at 16.)  Costco argues that De La Rosa cannot succeed on this claim becuase the wage statements provided to De La Rosa "accurately reflect the hours that were actually used to pay her."  (*MTD* at 16-17.)  De La Rosa does not dispute that her wage statements do, in fact, accurately reflect the hours she was paid (*see Opp.* at 23), but this fact is not decisive.

Section 226 requires an employer to accompany "each payment of wages" with "an accurate itemized statement" specifying, among other details, the "gross wages earned" and "net wages earned."  (Cal. Lab. Code § 226, subd. (a).)  As the California Supreme Court held, section 226 requires that wage statements must contain all amounts *earned*, not just those amounts actually paid.  *Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 119 (2022); *see also Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308 (2018) ("Wage statements should include the hours *worked* at each rate and the wages *earned*.") (emphasis in original).

Section 226.7 further requires an employer to pay "one additional hour of pay" for each day in which a lawful break is not provided.  (Cal. Lab. Code § 226.7, subd. (c).)  If

an employer does not provide a lawful break, both that additional credited hour of work and the corresponding premium pay owed must be reported on the wage statement. (*Id.*; *see also Naranjo*, 13 Cal. 5th at 120.)  And if the employer does not report those items on the wage statement, the employer deprives the employee of information needed to evaluate whether the payment is correct and therefore injures the employee under the terms of the statute. *Naranjo*, 13 Cal. 5th at 120.

Here, there is evidence that Costco failed to provide De La Rosa with a lawful break at certain times.  De La Rosa testified that she was told to clock out as though she was taking a meal break but continued to work. (DLR I, 46:7-47:6.)  De La Rosa's wage statements do not reflect payment of these premiums upon her termination.  (*Opp.*, Ex. OO.)  There is, therefore, a genuine dispute as to whether De La Rosa's pay statements contained all amounts earned, as required by Section 226.

Defendant's motion to dismiss the tenth cause of action is **DENIED**.

## G.   Punitive Damages

De La Rosa's complaint includes punitive damages as a prayer for relief for her first, second, third, fourth, fifth, sixth, seventh, and eight causes of action.  (*Compl.* at p. 19.)  Costco moves to dismiss punitive damages as a prayer for relief because none of the individuals at issue is an officer, director, or managing agent of Costco and, at any rate, De La Rosa has not established malice or oppression by clear and convincing evidence.  (*MTD* at 18.)  De La Rosa argues that Parker, Foster, Eakes, and Chavez are all agents of Costco and that there is a genuine dispute as to whether these individuals' actions constitute malice or oppression.

Punitive damages are recoverable "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." CAL. CIV. CODE § 3294.  When the defendant is a corporation, "the evidence must demonstrate an officer, director or managing agent of Defendant committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages." *Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013).

Punitive damages are recoverable for FEHA violations. *Commodore Home Systems, Inc. v. Superior Ct.*, 32 Cal. 3d 211, 221 (1982).

Because the Court grants summary judgement on the claims for disability discrimination, retaliation, failure to prevent discrimination, violation of the CFRA, and wrongful termination, the issue of punitive damages on those claims are moot. As to the claims for failure to engage in a good faith interactive process (second cause of action) and for failure to accommodate (third cause of action), the Court **DENIES** summary judgement on De La Rosa's prayer for punitive damages as premature. *See Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1104 (S.D. Cal. 2020); *McInteer v. Ashley Distrib. Servs., Ltd.*, 40 F. Supp. 3d 1269, 1295 (C.D. Cal. 2014).

## IV.    CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgement [Doc. 18]. The Court **GRANTS** summary judgement on the first, fourth, fifth, sixth, seventh, eighth, and tenth and **DENIES** summary judgement on the remaining claims.

**IT IS SO ORDERED.**

Dated:  November 23, 2022

_____
Hon. Thomas J. Whelan
United States District Judge

21